



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Patricia McLane
*Assistant United States Attorney*
*Patricia.McLane@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4942
MAIN: 410-209-4800
FAX: 410-962-3124

December 11, 2017

Landon White, Esq.
P.O. Box 3343
Baltimore, MD 21216

Re:   Plea Agreement in the Case of
      *United States v. Danyelle Sykes*
      CCB-17-0145

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to Danyelle Sykes ("the Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by **December 22, 2017**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to plead guilty to Count One of the *Superseding* Criminal Indictment now pending against her, which charges her with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951. The Defendant admits that she is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows for Count One:

   a.   Between November 2015 [2016] and December 2015 [2016], in the District of Maryland, there was an agreement between two or more persons to obtain property from another without that person's consent; by wrongful use of actual or threatened force, violence, or fear; and as a result, interstate commerce, or an item moving in interstate commerce, would

actually or potentially be delayed, obstructed, or affected in some way or degree; and

b.  That the Defendant knowingly and willfully became a member of the conspiracy.

## Penalties

3.     The maximum sentence provided by statute for Count One is as follows: 20 years' imprisonment, followed by a term of supervised release of up to three years, and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.     The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

a.     If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

       c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

       d.     The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

       e.     If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against her. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

       f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

       g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

       h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

     5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

     6.     This Office and the Defendant understand, agree, and stipulate to the Statement of Facts in Attachment A, and to the following applicable sentencing guidelines factors:

a.      Guideline Stipulations

The parties stipulate and agree that the facts enumerated in Attachment A would establish that the Defendant conspired to commit the crime of Hobbs Act robbery as to the Weis Market located at 10825 Birmingham Way, Woodstock, Maryland on December 18, 2016 and December 28, 2016. Therefore, pursuant to U.S.S.G. § 1B1.2(c), if the guidelines were calculated for this offense, the guidelines level will be based on the combined offense level of the robbery conspiracy, and the two robberies of the Weis Market in violation of 18 U.S.C. §1951.

The parties agree that the **base offense for the robbery conspiracy is 20** pursuant to U.S.S.G. § 2B3.1(a).

The offense level for both of the Weis Market robberies is **20** pursuant to U.S.S.G. § 2B3.1(a). During both robberies a firearm was brandished, adding an additional **5 levels** to the base offense level, pursuant to U.S.S.G. § 2B3.1(b)(2)(B). Additionally, during both robberies a person was physically restrained to facilitate commission of the offense, adding **2 levels** to the base offense level under § 2B3.1(b)(4)(B).

Finally, an additional **2 levels** are added pursuant to the grouping rule outlined in § 3D1.4. Based on the foregoing the **adjusted offense level is 29**.

The parties also stipulate that her **criminal history category is I.**

b.      Acceptance of Responsibility

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty. Based on the foregoing, the Defendant's **final adjusted offense level is 26.**

7.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant wishes to argue for any factor that could take the sentence outside of the advisory guidelines range, she will notify the Court, the United States Probation Office and

government counsel at least 14 days in advance of sentencing of the facts or issues she intends to raise.

## Obligations of the United States Attorney's Office

8. At the time of sentencing, this Office will recommend a reasonable sentence in accordance with 18 U.S.C. § 3553. This Office will also move to dismiss any open counts against the Defendant.

9. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct and any other factors relevant to the application of 18 U.S.C. § 3553(a), including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

11. The Defendant agrees to the entry of a Restitution Order for the full amount of the victim's loss. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss

caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that she will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Obstruction or Other Violations of Law

12.     The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of her sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and that the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea; rather, she will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what

guidelines range or sentence the Defendant will receive.  The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, along with the Sealed Supplement, constitutes the complete plea agreement in this case.  The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____
Patricia McLane
Assistant United States Attorney

7

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/28/18
Date

_____
Danyelle Sykes

I am Danyelle Sykes's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

2/28/18
Date

_____
Landon White, Esq.
Counsel for the Defendant

8

### Attachment A

### Statement of Facts in Support of Defendant's Guilty Plea

The undersigned parties stipulate and agree if this case had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial:

From at least November 2016 through December 2016, the Defendant, Danyelle SYKES, and Dajuan BONAPARTE, Kendall ALEXANDER and Michael LONESOME and others known and unknown, joined in an agreement to rob various commercial establishments to include the Weis Market, located at 10825 Birmingham Way, Woodstock, Maryland. Weis Market is part of a Mid-Atlantic food retailer, Weis Markets, Inc., that engages in interstate and foreign commerce.

On a date prior to December 18, 2016, the Defendant assisted ALEXANDER with drawing a map of the Weis Market in Woodstock, Maryland. The Defendant had previously worked at the Weis Market and confirmed where the entrance, money safe and other areas of the store were located. She also allowed ALEXANDER and others to use her vehicle to travel to the Weis Market.

On December 18, 2016, ALEXANDER, BONAPARTE and at least one other co-conspirator robbed the Weis Market. Two of the conspirators brandished firearms. The men bound multiple employees with zip ties and forced them into the store's office at gunpoint, demanding they open the safe. After taking cash and U.S. postage stamps from the office, the conspirators fled the store. The co-conspirators gave SYKES $1,500 in cash and a roll of stamps from the stole store proceeds.

ALEXANDER, BONAPARTE and three other co-conspirators robbed the same Weis Market on December 28, 2016. ALEXANDER and another conspirator brandished handguns.

The conspirators forced employees into the store's office at gunpoint and demanded they open the safe. After taking cash from the office, the conspirators fled the store. ALEXANDER and BONAPARTE were arrested after a car and foot chase. Among the items recovered at the scene was a backpack containing money consistent with that taken during the robbery, a cell phone belonging to ALEXANDER, clothing matching the description of that worn by the robbers, and a loaded handgun matching the description of the weapon used during the robbery.

SYKES was also found at the scene of ALEXANDER'S arrest. SYKES provided consent to search her vehicle. Among the items recovered during this search were zipties consistent with those used in the robbery described above, a printed list of Weis Markets in the greater Baltimore area, hand-written directions to the Weis Market in Woodstock, described above, and a hand-drawn map of the interior of the Weis Market in Woodstock, Maryland, which included identification of the location of the store's office where the safe was located. SYKES also confessed to knowing and sending the code information for the Weis safe.

Other evidence would include electronic messages and toll records between the conspirators regarding the Weis robbery. A witness would testify that ~~the Defendant~~ another conspirator made rent payments in cash immediately after ~~all three~~ both robberies. Another witness would testify that she was present when ALEXANDER, BONAPARTE and LONESOME discussed robbing the Weiss supermarket.

I have read this Statement of Facts and carefully reviewed it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I agree that each fact is true and could have been proven at trial, and I do not wish to change any part of it.

_____
Date

_____
Danyelle Sykes

I am Danyelle Syke's attorney. I have carefully reviewed every part of this Statement of Facts with her. She advises me that he understands and accepts it. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

_____
Date

_____
Landon White, Esq.
Counsel for the Defendant